Jose S. C. SALAZAR and Virginia S. Salazar, Individually and as parents of Randolph M. Salazar, a minor, Juan D. Salazar, a minor, and Kenneth L. Salazar, a minor; Randolph M. Salazar, by and through his next friend, Jose S. C. Salazar; Juan D. Salazar, by and through his next friend, Jose S. C. Salazar; Kenneth L. Salazar, by and through his next friend, Jose S. C. Salazar; Larry R. Ball and Joyce Ball, Individually and as parents of Lawrence R. Ball, a minor; Lawrence R. Ball, by and through his next friend, Joyce Ball; David A. Vigil and Mary E. Vigil, Individually and as parents of Ronald E. Vigil, a minor; Ronald E. Vigil, by and through his next friend, David A. Vigil, Plaintiffs-Appellants,

v.

SOUTH SUBURBAN METROPOLITAN RECREATION AND PARK DISTRICT, Defendant-Appellee,

and

City and County of Denver, a Municipal Corporation of the State of Colorado; City of Sheridan, a Municipal Corporation of the State of Colorado; County of Arapahoe, a corporate body; Board of County Commissioners of the County of Arapahoe; Roger L. Webb, D. M. Simmons and Paul T. Van Winkle, Individually and as Co-Venturers of 4150 Joint Venture; 4150 Joint Venture, a Joint Venture, and Colorado Disposal, Inc., a Colorado Corporation, Defendants.

No. 79CA0682.

Colorado Court of Appeals, Div. I.

July 3, 1980.

Edward A. Jersin, Julie M. Reardon, Denver, for plaintiffs-appellants.

Wood, Ris & Hames, P. C., Eugene S. Hames, Denver, for defendant-appellee.

COYTE, Judge.

The plaintiffs, five children and their parents, instituted this action against, among others, South Suburban Metropolitan Recreation and Park District. The trial court granted a motion for summary judgment in favor of the Park District. We affirm.

The pleadings and affidavits showed that the children were severely injured in an explosion in a storm sewer on property adjacent to Chase Park, which is owned and maintained by the Park District. The west entrance of the storm sewer was 75 to 100 yards from Chase Park and plainly visible from the park. Chase Park had been constructed a few months prior to the accident near an already-existing landfill site for the

dumping of solid waste materials. The children left their playing area in the park and entered the storm sewer tunnel to a point under the landfill site. One of the children lit a match which ignited methane gas in the storm sewer, resulting in an explosion and fire.

In their complaint, the plaintiffs alleged, among other things, that the operation of a landfill produces methane gas which becomes explosive when confined, and that the Park District "negligently failed to provide adequate safety measures relating to said Chase Park and said storm sewer entrance" on the neighboring landfill property. The question here, as in the trial court, is whether the Park District has a duty to safeguard the plaintiffs from harm under these circumstances. We agree with the Park District's argument that *Turner v. Grier*, Colo.App., 608 P.2d 356 (1979) is controlling.

Applying the analysis of *Turner* here, if we assume the risk of injury to the plaintiffs and its foreseeability, and, after considering the likelihood of injury, the magnitude of the burden of guarding against it, the consequences of placing that burden upon the defendant, and after weighing the social utility of the defendant's activities in maintaining a park against any culpability or moral blame which may have existed, we conclude that the entry of summary judgment for the Park District was proper. Whatever duty, if any, the Park District owed to the public, including these plaintiffs, to provide a reasonably safe park facility, this duty did not include the responsibility to provide safety measures in Chase Park to prevent the entry of children into a storm sewer 75 to 100 yards away from the property maintained by the Park District.

The judgment is affirmed.

SMITH, J., concurs.

KELLY, J., specially concurs.

KELLY, Judge, specially concurring.

I concur in the result reached by the majority, and in the rationale supporting it, only because I feel compelled to do so by binding Colorado precedent. I am disturbed, however, with the direction that Colorado negligence cases have taken, and are taking, in assigning to the courts the responsibility for determining on an *ad hoc* basis, when a legal duty exists, as a prerequisite to a defendant's liability. The result of this approach to "duty" in a negligence case can mean only that the law is no more predictable than the strange events which shape human lives. *See W. Prosser, Torts* § 53 (1971).

In my view, "duty" and "standard of care" are in perfect equation, and the standard of care established by law for the protection of others is that of a reasonable person under like circumstances. *Restatement (Second) of Torts* §§ 282, 283. All considerations or inquiries beyond this are, I think, questions of fact for a jury. *See 2 F. Harper & F. James, The Law of Torts* § 16.10 (1956). Thus, here, the question before us is not whether the Park District had a "legal duty" to provide safety precautions for the children using its facilities in order to protect them against the alleged danger of methane gas in the nearby storm sewer. Rather, the question is whether the Park District's failure to provide safety precautions under these circumstances unreasonably created a risk of harm to the children. That, to me, is a fact question, and every time the judiciary undertakes to define, in a given case, whether a defendant has a "legal duty" as a prerequisite to liability, it usurps the power of the jury to find facts.

If this analysis be sound, we do no service to the profession and the people it serves by perpetuating the sophistry. I believe that the role of the judiciary in determining duty in a negligence case should be reevaluated.